# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 08 C 50102 | **DATE** | 9/2/2010 |
| **CASE TITLE** | Joseph A. Ruth vs. The Paul Revere Life Insurance Company | | |

**DOCKET ENTRY TEXT:**

For the reasons stated below, defendant's motion for summary judgment is granted and plaintiff's motion for summary judgment is denied. Judgment is entered in favor of defendant and against plaintiff on all counts. This case is terminated.

*Philip G. Reinhard*

Electronic Notices.

■[ For further details see text below.]

## STATEMENT - OPINION

Plaintiff, Joseph Ruth, a citizen of California, brought this action against defendant, The Paul Revere Life Ins. Co. (Paul Revere), a Massachusetts corporation with its principle place of business in Massachusetts, on May 9, 2008, in the Circuit Court for the 17th Judicial Circuit, Winnebago County, Illinois. Plaintiff seeks damages in excess of $75,000, and defendant properly removed to this court based on diversity of citizenship jurisdiction. 28 U.S.C. § 1332(a)(1). Plaintiff alleges breach of contract (Count I), vexatious and unreasonable failure to honor an insurance policy in violation of Section 5/155 of the Illinois Insurance Code, 215 ILCS 5/155 (Count II), *quantum meruit* (Count III) and unjust enrichment (Count IV). Both parties move for summary judgment pursuant to Fed. R. Civ. P. 56.

Plaintiff was born Joseph A. Rutkiewicz on November 15, 1948 and changed his name to Joseph A. Ruth on August 3, 1973. (Plaintiff Facts ¶¶1, 9). Plaintiff's uncle, Joseph Stupka Jr. applied for a juvenile life insurance policy on plaintiff's life on October 16, 1949. (Plaintiff Facts ¶¶2–3). Paul Revere issued a "Juvenile Endowment at age 18" insurance policy Number 324076 in the insured sum of "One Thousand Dollars" naming plaintiff as the insured with a maturity date of November 15, 1966. (Plaintiff Facts ¶5).

The policy provides "The Paul Revere Life Insurance Company will pay to the insured the Sum Insured provided above on the anniversary date of this Policy nearest the eighteenth birthday of the Insured, if the Insured is then living." (Plaintiff Facts ¶7). The policy also states, "[d]uring the lifetime of the Applicant, the rights and options granted in this policy may be exercised only by the Applicant. In the event of the death of the Applicant, the rights of such applicant, unless the Applicant has named a successor by written notice to the Home Office of the Company, shall pass immediately to the insured." (Defendant Facts ¶11) "The Applicant, or the person having control of the policy as provided above, may, without the consent of any beneficiary, borrow on this policy, or surrender it, or exercise any other rights or options provided therein, unless the Applicant or any such other person having control of the policy by filing a written notice at the Home Office has designated a beneficiary irrevocably or that a beneficiary or other person as owner shall exercise such rights or options." (Defendant Facts ¶12). The policy names the Applicant as "Joe Stupka, Jr.," (Defendant Facts ¶7), and names Rose Rutkiewicz (a/k/a Rose Ruth), the plaintiff's mother, as the successor to the applicant's rights. (Defendant Facts ¶11). Joe Stupka Jr. died on July 18, 1971. (Plaintiff Facts ¶14). Rose Ruth died on January 7, 1997. (Plaintiff Facts ¶15).

The policy also contained terms and conditions providing for payment to the Applicant (or his successors) of

the sum insured, for loans up to the policy value, and for lapse of the policy for non-payment of premiums. (Defendant Facts ¶¶13–14).

On August 7, 2007, plaintiff's cousin, Vlasta Hanson nee Stupka, found the policy while sorting her recently-deceased mother's business records. (Plaintiff Facts ¶12). Hanson personally delivered the policy to plaintiff. (Plaintiff Facts ¶13). Plaintiff first demanded payment on the policy in September 2007. (Plaintiff Facts ¶16). Defendant has not paid plaintiff the policy proceeds.

Defendant informed plaintiff that it had no record of active coverage on the policy. (Defendant Facts ¶24). Defendant had no other documents regarding the policy, and it does not require a policy owner to surrender the policy upon maturation. (Defendant Facts ¶¶27, 31). Defendant admits that it was unable to provide plaintiff "with a specific reason why the policy is no longer in force." (Defendant Facts ¶25). Defendant has offered possible reasons such as loans, failure to pay premiums, cash surrender, or prior payment (Defendant Facts ¶¶26–27, 32), but all of these reasons are speculative.

Defendant principally argues plaintiff's contract claim is barred by the statute of limitations. For contract actions, "the cause of action ordinarily accrues at the time of the breach of contract, not when a party sustains damages. The reason for this distinction is the concern that plaintiffs will delay bringing suit after a contract is breached in order to increase damages." Hermitage Corp. v. Contractors Adjustment Co., 651 N.E. 2d 1132, 1135 (Ill. 1995). Illinois provides a ten-year statute of limitations for actions on "written contracts, or other evidences of indebtedness in writing." 735 ILCS 5/13-206. Plaintiff's contract claim is based on an endowment policy issued by defendant. "[U]pon the maturity of an endowment policy the rights of any named beneficiary terminate and the insurer is obligated to the named insured as a debtor." 1 COUCH ON INSURANCE (3rd Ed.), § 1:41. Assuming the endowment policy remained in force at its stated maturity date, defendant became obligated, as a debtor under the written contract, to plaintiff on the date the policy matured, November 15, 1966. Since the endowment policy is a written contract or other evidence of indebtedness in writing, the right to payment accrued on the maturity date and the ten-year limitations period would have expired ten years from that date on November 15, 1976.

Plaintiff contends his claim is saved by the discovery rule. "Under the 'discovery rule,' a party's cause of action is held to have accrued when the party knows or reasonably should know of an injury and that the injury was wrongfully caused." Prignano v. Prignano, No. 2-09-0439, 2010 WL 3180093, *8 (Ill. App. Aug. 9, 2010) (citation and internal quotation marks omitted). "Although whether a party's claim was filed within the applicable limitations period after she discovered her cause of action is generally resolved as a question of fact, it may be resolved as a question of law when the facts are undisputed and the outcome is clear." Id. The discovery rule applies to breach of contract actions, as well as tort and tort arising from contract actions. Id.; Hermitage, 651 N.E. 2d at 1136.

Illinois adopted the discovery rule in Rozny v. Marnul, 250 N.E. 2d 656 (Ill. 1969). The Illinois Supreme Court observed "[t]he basic problem is one of balancing the increase in difficulty of proof which accompanies the passage of time against the hardship to the plaintiff who neither knows nor should have known of the existence of his right to sue." Id. at 664. "[W]here the passage of time does little to increase the problems of proof, the ends of justice are served by permitting plaintiff to sue within the statutory period computed from the time at which he knew or should have known of the existence of the right to sue." Id. "[T]he interests of the plaintiff and defendant should be identified and weighed in determining whether the discovery rule should apply in a given case." Golla v. General Motors Corp., 657 N.E. 2d 894, 900 (Ill. 1995); e.g., Nolan v. Johns-Manville Asbestos, 421 N.E.2d 864 (Ill. 1981) and Hitt v. Stephens, 675 N.E. 2d 275 (Ill. App. 1997) (applying balancing test).

Here, the balance weighs in defendant's favor. Anyone with any personal knowledge of the facts concerning the purchase, issuance, premium payments, loans, or cash surrender of the policy is dead or unknown. The evidence consists of 1) the policy; 2) a receipt for "the first premium as noted below" with the typed text: "Annually $54.93" the handwritten figure "745.84" under the 54.93 and under that a handwritten line with "$800.77" handwritten under the line. (54.93 plus 745.84 equals 800.77 but nothing on the receipt indicates the significance of the handwritten numbers); and 3) a handwritten note bearing the signature "PG Watters" and stating "Here is the policy Joe. Prem. in full $800.77. See you before too long. Thanks a million Joe– come see us."

While it is plausible to infer from these documents that $800.77 is the amount that would fully pay the policy through its maturity date, it is not possible to reasonably infer that the $800.77 was actually ever paid to defendant and no one is available to testify as to whether payment was made or not. The unavailability of witnesses due to the passage of time is at the core of why statutes of limitations exist. The receipt supports the payment of the first annual

premium.  Neither it, nor the PG Watters note, support more.

On the plaintiff's side of the scale, is the uncontroverted fact he did not learn of the existence of this policy until his cousin found it and told him about it in August, 2007, forty-one years after the maturity date and thirty-one years after the expiration of the limitations period. Plaintiff argues that the court's prior order on defendant's motion to dismiss has already established that the discovery rule is applicable because no new facts have come to light since the motion to dismiss was denied.  But, summary judgment is more rigorous than a motion to dismiss.  Plaintiff bears the burden of producing facts in opposition to summary judgment that would entitle him to judgment. See Siegel v. Shell Oil Co., No. 09-3451, 2010 WL 2977315, * 4 (7th Cir. July 30, 2010).  Once defendant has properly raised the statute of limitations defense (which it has by showing more than ten years have passed since plaintiff's eighteenth birthday), plaintiff must present evidence that he is entitled to invoke the discovery rule to overcome the statute of limitations defense.  See Henderson v. Jones Bros. Constr. Co., 602 N.E. 2d 16, 18 (Ill. App. 1992); Cathedral of Joy Baptist Church v. Vill. of Hazel Crest, 22 F.3d 713, 717 (7th Cir. 1994).  The only evidence he produces is the policy, that his cousin found it, and that he had no knowledge of it before she told him about it.  He does not produce any evidence to show that the "passage of time [did] little to increase the problems of proof." Rozny, 250 N.E. 2d at 664.  In fact, the passage of time makes proof impossible in this case.  There is simply no way for either party to submit evidence to show the premiums were paid or that no loans were taken so that the policy remained in force on plaintiff's eighteenth birthday.  Allowing plaintiff to proceed on this claim would lead to a judgment based entirely on speculation.  See Amundson v. Mutual Benefit Health & Accident Assoc., 375 P.2d 463 (Utah 1962) (holding 33-year lapse from death of insured to filing proof of loss was too long even if plaintiff had a reasonable excuse for her ignorance of the policy). On the facts present here, as a matter of law, the discovery rule does not apply to this claim.  Defendant is entitled to summary judgment on the Count I contract claim.[1]

The vexatious and unreasonable failure to honor the policy claim set forth in Count II also fails as it is dependent on plaintiff's succeeding on the contract claim.

Counts III and IV, pled in the alternative, allege that plaintiff is entitled to equitable relief through *quantum meruit* or unjust enrichment.  Illinois law does not permit a party to recover on quasi-contract theories like *quantum meruit* or unjust enrichment when an actual contract governs the parties' relations on that issue.  Keck Garrett & Assoc., Inc. v. Nextel Comm., Inc., 517 F.3d 476, 487 (7th Cir. 2008).  The existence of the juvenile endowment policy precludes recovery on quasi-contract grounds.

For the foregoing reasons, defendant's motion for summary judgment is granted and plaintiff's motion for summary judgment is denied.  Judgment is entered in favor of defendant and against plaintiff on all counts.  This case is terminated.

---

1. Defendant also argues that factually plaintiff cannot prove his claim.  The decision on statute of limitations grounds makes resolution of that issue unnecessary though clearly the same proof problems that make application of the discovery rule inappropriate would doom plaintiff's claim on the merits.